## WARREN NEWELL *vs.* JOSIAH HILL.

Where land is conveyed by deed poll, with a reservation or provision that the grantee shall perform a certain service for the benefit of the grantor, and the grantee accepts the deed, he is bound to perform the service.

An occupant of land, who is bound to maintain a fence between his own and an adjoining enclosure, may place half of a fence, of reasonable dimensions, on the land of the adjoining owner. And he may cut half of a ditch on the land of such owner, when a ditch is proper for a partition fence.

TRESPASS for breaking and entering the plaintiff's close in Lynnfield, and there digging a ditch thirty-five rods in length and two and half feet in width, and taking and carrying away the turf, &c.

The defendant was defaulted ; but the parties agreed to submit to the court the question whether he was liable to this action, on the following facts : The ditch mentioned in the plaintiff's declaration was cut by the defendant, for a fence between his land and that of the plaintiff, and was of dimensions suitable for a fence at that place. One half of the ditch was cut on land of the plaintiff. The defendant was bound, in the manner stated in the opinion of the court, to construct and maintain a fence on the boundary line between his land and the land of the plaintiff.

Default to be taken off, " if in the opinion of the court the defendant had a right to make the ditch on land of the plaintiff as is above described."

*Kinsman,* for the defendant.

*Proctor,* for the plaintiff.

SHAW, C. J.   This case presents a point which seems not to have been settled by judicial decision in this Commonwealth ; at least it was so stated in the arguments of the learned counsel, and we have seen nothing to counteract that statement.   The plaintiff conveyed to the defendant, by deed and for valuable consideration, a tract of land described, bounding it on one line upon the grantor's own land.   In the body of the deed is the following stipulation :  " The said Josiah Hill, his heirs and assigns, to build and forever maintain a good and sufficient fence the whole extent of the line bounding on the grantor's land." This, although it purports to be a stipulation on the part of the grantee, and although the deed is not signed by the grantee, is still a valid and binding contract on his part.   A deed poll, when accepted by the grantee, becomes the mutual act of the parties, and a stipulation, on the part of the grantee, though it cannot be declared upon as his deed, yet by force of his acceptance is a valid contract on his part, by which a right may be reserved or granted, or upon which a suit may be maintained. *Goodwin* v. *Gilbert,* 9 Mass. 510.   *Nugent* v. *Riley,* 1 Met. 117.   It follows that by force of this stipulation, Hill, the grantee, became bound to make and maintain the whole partition fence at his own expense, instead of one half, which he would have been bound by law to make without such stipulation ; the land granted and the land adjoining both being parcels of enclosed land.   And he thereby acquired the same right in regard to the plaintiff's land, as the owner of one adjoining lot has over the land of another, when required by law to make his part of a partition fence, where such part has been assigned, by mutual agreement, or by fence viewers in the mode provided by law, in cases where parties do not agree.

Parties entering into contracts are presumed to know the law, by which their rights and duties under such contracts are de

fined and regulated, and to make their contracts in reference to such laws. In the application of this principle, we are to pre sume that when this deed was executed, it was understood that the parties would become conterminous proprietors, and that each would be bound by law to make one half of the dividing fence between them, in the absence of any express provision by con-tract. It was in reference to this liability, that this contract was made. It changed the legal liabilities of the parties only so far as the express contract extended ; and in other respects left them as they were. This stipulation did not provide how this fence was to be built, of what kind or materials, or on either or which side of the mathematical line, constituting the dividing line between them. These particulars were left to be regulated, either by law, or usage, or some reasonable construction. The only particular in which the agreement changed the rights of the parties was, that one was to build and maintain the whole parti-tion fence, instead of one half it. But the mode of building, and the precise place at which it should be built, were precisely the same, in respect to the whole, as they would have been in re spect to one half, had there been no stipulation, after a regular division of the fence by sections.

We are then brought back to the question, what are the rights of one, to whom the building of a division fence has been by law assigned, as to building on his own, or on the adjoining land ?

This is governed entirely by statute in this Commonwealth The Rev. Sts. *c.* 19, § 2, require that the respective occupant of lands, enclosed with fence, shall keep up and maintain partition fences in equal shares, &c. In the first place, it is to be con-sidered, that the division fence, that is, the whole of the division fence, is made for their mutual and equal benefit, and therefore, upon the plainest principles of equity, the expense, as well of cost of building, as of land to build upon, must be borne by them equally. For, although the fence is built, one section by one party and another by the other, this is only an easy and convenient mode of dividing the expense of building. Though thus built in separate sections, each has an interest in the whole, and in every secti n ; and when built, it belongs beneficially to

Newell *v.* Hill.

both, as much as if it had been done by contract, and the expense divided, or both joined in building the whole. If it is to be, in all respects, for their common benefit and at their common expense, it follows that it is at their equal expense of land, as well as cost of building. As every species of fence must take some land, and cannot stand on a mathematical line, and as there is no reason why it should stand more on the land of one than the other, it follows as a necessary cor*sequence that it is to stand equally on the land of both, or one half on each. It is one of the cases where equality is equity. It is the common case, where a burden is to be borne, a duty to be performed, or an expense incurred by two or more persons, and no law imposes a larger proportion on one than the other, it is to be borne equally.

It is then asked, if one can take the land of another equally with his own, to build fence upon, how much may he take ; what kind of fence may he build ? Shall it be a wide wall, a broad canal, or how otherwise ? We think the answer is obvious, and is attended with no more uncertainty than many other legal rights. It must be a reasonable quantity ; and that is to be determined by a just regard to the proper accomplishment of the purpose which both parties have in view, and in which they have a common interest. It is such a fence as will prevent the cattle of one party from escaping into the land of the other. In determining what is reasonable, regard would be had to the nature and character of the land to be divided. A high and thick stone wall, which would be well suited to be a good division fence ᵦetween pasture lands, measured by chains and links, could not be considered reasonable in a city, where land, being more valuable, is measured by feet and inches, and where such a wall could not be required for any useful purpose. A given quantity of land might well be regarded as reasonable in one case, which would not be so in the other.

Further ; in considering what is reasonable, great regard should be had to the usage and practice of men of ordinary skill and judgment in the building of fences in their own lands on similar kinds of soil, and for like purposes. So where the char

acter of the soil is such that a ditch is the most suitable and proper mode of separating the lands of one from the other and stopping cattle, and especially where the usage and practice of judicious landholders warrant the practice, it is to be deemed reasonable ; and the width of the ditch will be governed by l'ke considerations, which are, the object to be accomplished, the fitness of the means, and the usage and practice of judicious landholders. The width of the ditch being determined by these considerations, we think the party whose duty it is to build and maintain the partition fence, either by contract, or by a legal division, may cut the ditch one half on his own land, and one half on the land of the conterminous proprietor. So, when the ditch, and the embankment made by the earth thrown from it, are used together as a fence, and the ditch is made on one side of the dividing line and the embankment on the other, each oc cupying about the same quantity of land, if justified by the same considerations of fitness and usage, must be considered reasonable, and therefore legal.

It being agreed that the ditch in question was a suitable and proper fence for the place, and for the purpose contemplated, the court are of opinion that the defendant was not guilty of a trespass in cutting one half of it on the plaintiff's land, and therefore that the default must be taken off.

In England, perhaps, the party who makes a fence between his close and that of an adjoining tenant, must make it wholly on his own land. *Vowles* v *Miller*, 3 Taunt. 138, per Lawrence, J. 2 Harrison's Digest, (Amer. ed.) 1163 1 Chit. Gen. Pract. 193, 194. 2 Leigh's Nisi Prius, 1451. Gale & Whatley on Easements, 296 – 298. Roscoe on Ev. (Amer. ed ) 382.

But by the common law of England, the tenant of a close is not obliged to fence against an adjoining owner or tenant, unless by force of agreement or prescription. 3 Kent Com. (3d ed.) 438. 5 Greenl. 359. 4 Halst. 385. 4 N. Hamp. 36 1 Cow. 79, *note.*

· In Massachusetts, the foundation of all obligations to make and repair fences (where no agreement has been made) rests on statutes, which require that the respective occupants of adjoining enclosures shall make and repair sufficient fences at their equal expense. 6 Mass. 94 – 96.

It would seem, therefore, to be very clear, that the English decisions, as to adjoining tenants' rights and duties concerning fences, are not applicable in this Commonwealth.

See *Gibson* v. *Vaughn*, 2 Bailey. 389